**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| PHILIP DUANE LUNT, | ) | **Bankr. No. 10-13712** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| PHILIP DUANE LUNT, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | **Case No. 12-1337-CM** |
| THE PEOPLES BANK, Trustee, | ) | |
| STEVEN A. LUNT, Intervenor, | ) | |
| ELAINE L. STELTER, Intervenor, | ) | |
| | ) | |
| Appellees. | ) | |

## MEMORANDUM AND ORDER

This is an appeal of the final Memorandum Opinion and Judgment (Doc. 5-18) of the bankruptcy court. Appellant Philip Duane Lunt ("Debtor") appeals the bankruptcy court's decision denying Debtor's motion for summary judgment and granting the motion for summary judgment of intervenors Elaine L. Stelter ("Elaine") and Steven A. Lunt ("Steven"). Debtor claims that the bankruptcy court erred in three ways: (1) in deciding that Debtor's bankruptcy eliminated his personal liability for his pre-petition promissory note but did not extinguish the underlying debt; (2) in deciding that the doctrine of recoupment applied; and (3) in deciding that The Peoples Bank ("Trustee")'s actions were permissible under state law and the trust documents. The court has carefully reviewed the record and affirms.

**I.    Factual Background**

-1-

The following facts are uncontroverted and were set forth in the bankruptcy court's decision. For reasons of judicial efficiency, the court reproduces them in their entirety here.

> The [Harry B. Lunt] Trust [("Trust")] was established in 1978 by Harry B. Lunt ("Harry or Grantor"), the father of Debtor Lunt, Elaine, and Steven ("the Lunt Children"). On November 7, 1985, the Trust entered into a contract with Debtor Lunt and his wife, Rose Ann Lunt, for the sale of a farmhouse to Debtor Lunt and Rose Ann[ ]. The purchase price was $50,000.[1] In partial payment for the home, Debtor and Rose Ann executed the Note, dated November 7, 1985, for $33,333.33 payable to The Peoples Bank as Trustee. The Note provides for interest at the rate of 10% per annum, payable from the date of the transfer of the property. The principal is due in five years. Although the contract provides for transfer of the farmhouse to Debtor and Rose Ann, the deed dated November 7, 1985, conveyed the farmhouse only to Rose Ann. But it is uncontroverted that Debtor has lived in the farm house since the transfer.
>
> Debtor filed for relief under Chapter 7 on November 25, 1988. The Peoples Bank and the Trustee were listed as creditors. A proof of claim for payment of the Note was filed. Debtor was granted a discharge on July 19, 1989. The parties agree that the Note was within the scope of the discharge order.
>
> The Grantor created the Trust, which is governed by Kansas law, by an instrument dated December 27, 1978. The Peoples Bank of Pratt is named as the Trustee. The Trust agreement was amended in its entirety by an Amendment to Trust Agreement dated March 29, 1984, and by a limited Amendment of Trust Agreement signed on November 7, 1985, addressing the Note. A purpose of the Trust was to provide for the Grantor during his lifetime. Upon his death, a marital trust and a non-marital trust were created, and distributions from the marital trust were made to Christine Lunt, Harry's wife and the mother of the Lunt Children. The Trust provides that upon the death of Christine, which occurred in 2004, the two trusts are to be administered as one for twenty years, after which the Trust will terminate. Upon termination, the Lunt Children are entitled to distributions of all principal and accrued and unpaid income.
>
> The following specific terms of the Trust are relevant. The Trustee is given "all powers expressly set forth in the Uniform Trustees Power Act (K.S.A. 58-1201, et seq[.]) as may be amended from time to time" and other powers set forth in the 1984 Amendment to Trust Agreement.[2] After Christine's death, Article VI(A)(3)(b) of the 1984 Amendment to Trust Agreement, a subsection of the martial trust provisions, gives the Trustee discretion to make distributions of income to the Lunt Children as follows:

---

[1] The Note was therefore for two-thirds of the purchase price. There is no evidence that Debtor Lunt paid the Trust the other one-third of the value. In essence therefore, through the Note, Debtor agreed to pay the Trust Elaine and Steven's share of the value of the home.

[2] 1984 Amendment to Trust Agreement, Article VII.

>   [T]hen upon the death of Grantor's wife, the Trustee shall continue to hold any accumulated income and principal in trust and shall administer the same as follows:
>
>   . . . .
>
>   b. All or any part of the income of this trust may be distributed at any time and from time to time and for any reason for the benefit of the Grantor's children in such proportions and amounts as the Trustee may determine, it being the intention hereof to vest in the Trustee the sole and absolute power to distribute or not distribute amounts of income at such times and in such proportions among said individuals as it deems appropriate.

Also, under Article VI(C) of the 1984 Amendment to Trust Agreement, after the death of Christine, the marital trust and the non-marital trust are treated as one and administered as provided in the Amendment for a period of twenty years, when the Trust terminates. Upon termination of the Trust, Article VI(C)(4) provides for equal distributions to the Lunt Children, as follows:

>   Upon termination, the Trustee shall distribute the principal and any accrued and undistributed income of the trust in equal shares to the children of the Grantor, provided, the Trustee is authorized and empowered to make unequal distribution of the principal and any accrued and undistributed income in cash or in kind in order to carry out the desires of the Grantor for the Trustee to consider all transfers to Grantor's children that have been made by the Grantor or his wife by Will or otherwise. Any loans made by Grantor or his wife which have not been repaid shall be treated as transfers by the Trustee, whether or not the statutes of limitation have run.

The Amendment of Trust Agreement executed on November 7, 1985, the date of the Note, states in part:

>   The Trustee is hereby directed to enter into the attached contract on behalf of the Trust, to accept the notes as required in such contract . . . and to execute the deed in the form as attached hereto, to carry out the terms of the contract.
>
>   The Trustee is further directed that upon the death of the survivor of myself and my wife . . . and collection of the note to the Trustee in the amount of . . . $33,333.33 . . . , whichever event shall last occur, to distribute one-half (½) of the principal of such note to my son, Steven A. Lunt and one-half (½) to my daughter, Elaine Lunt Stelter.

As found above, the home transferred from the Trust to Debtor and his wife was valued at $50,000. Since the Note, the only consideration which Debtor paid for the home, was for two-thirds of the home's value, Debtor received his one-third interest in that portion of the Trust assets at the time of the transfer, and the other two beneficiaries, Elaine and Steven, were to receive their share through distributions after payment of the Note.

Ted Loomis was The Peoples Bank trust officer primarily responsible for the Trust from 1984 until 2006 or 2007. Thereafter, Richard Mullin was the primary trust officer for the Trust, until he retired in December 2010. No distributions from the Trust to the Lunt Children were made in 2004, 2005, or 2006. Beginning in 2007, equal cash distributions were made on behalf of each child.[3]

By an e-mail to Richard Mullin, copied to Ted Loomis, dated December 16, 2009, Debtor complained about the administration of the Trust as it related to Luntacres Farm, Inc., a family farming operation, the stock of which is held at least in part by the Trust. Debtor stated that he believed that his sister and Ted Loomis were "calling the shots" and alleged that Ted Loomis was "running money through the Trust," or laundering money through the Trust. Debtor concluded the correspondence by stating that he had been thinking about what type of legal action could be taken. The following day, Debtor sent to the same individuals another e-mail concerning similar allegations of mismanagement and stating that he firmly believed that Steven and Elaine "are managing the Harry B. Lunt Trust."

By letter dated December 18, 2009, Richard Mullin responded to the allegations and also stated the following regarding distributions from the Trust:

> Historically, we have tried to make distribution of the net income of the trust to the three current beneficiaries. As you know, the trust agreement gives the trust the full discretion as to whether or not to make such distributions and, if so, in what amounts. In other words, the trust agreement does not require us to make distributions of income, nor must any such distributions necessarily be equal between beneficiaries.
>
> The reason I point this out is that we are quite concerned regarding your failure, since 1985, to make any payments on the note that had a face value of $33,333.33. Under its terms and with accrued interest, you now owe over $112,000. In accordance with the terms of an amendment to the trust, your Father wanted for us to distribute the cash from the note payment to Elaine and Steve after the death of your Mother. Not only are we not able to do that since you have not made payments on the note, but the note continues to accrue interest. While we intend to carry out the terms of the trust regarding any discretionary distribution of principal and/or interest to you, we must begin making any income payments that have historically been paid to you and use those amounts to make

---

[3] Adjustments were made to the cash distributions to Elaine and Steven to account for withholding of taxes, but these adjustments are not relevant to this case.

> payments on your liability to the trust. If your circumstances would
> warrant a reconsideration of making a distribution directly to you, please,
> at any time, make application for us to reconsider our position.[4]

> On December 19, 2009, Debtor again sent an e-mail to Richard Mullin and Ted
> Loomis in which he referred to a "civil law suit" against the bank. By an e-mail dated
> April 15, 2010, to Ted Loomis, Debtor's attorney threatened to sue the bank for breach
> of fiduciary duty and conversion relating to the farm corporation.

> In 2010, Richard Mullin recognized that Debtor's failure to make payments on
> the Note would preclude the express purpose of the Trust to divide the Trust assets
> equally among the three children. He testified in a deposition as follows:

>> The primary thing was that I'd run an amortization schedule of
>> that note plus its accrued interest, and I don't remember whether it had
>> already reached but it was not too far from reaching a one-third share of
>> the trust as it was valued at that time. And I was concerned that if we
>> waited until 2024 that we would not be able to satisfy a one-third
>> distribution of the trust to the three beneficiaries.[5]

> On June 2, 2010, the Trustee determined to distribute $4,811 in accrued income
> to each beneficiary. But Debtor's distribution of $4,811 was not paid to him in cash.
> Instead it was applied to "interest on Notes." At the same time, cash distributions of
> $4,811 were made to Elaine and Steven, and the $4,811 to which Debtor would have
> been entitled was divided into two additional cash distributions of $2,405.50 that were
> made to Steven and Elaine.

(Doc. 5-18 at 3–8 (original formatting and citations retained).)

## II. Legal Standard

This court employs a *de novo* standard of review of the bankruptcy court's conclusions of law. *Cohen v. Borgman (In re Borgman)*, 698 F.3d 1255, 1259 (10th Cir. 2012) (citation omitted). Further, "[t]his [c]ourt must . . . reach its own conclusions regarding state law legal issues, without deferring to the bankruptcy court's interpretation of state law." *Id.* (citation omitted).

## III. Discussion

### A. Whether the Discharge Injunction under 11 U.S.C. § 524(a)(2) Applies to the Debt Evidenced by the Note

---

[4] Doc. [5-3] at 27–28.

[5] Doc. [5-6] at 3.

As is stated above, on November 25, 1988, Debtor filed for Chapter 7 bankruptcy. Debtor received a discharge under 11 U.S.C. § 524(a)(2), which went into effect on July 19, 1989. The list of discharged debts included the Note. 11 U.S.C. § 524(a)(2) states that a discharge "operates as an injunction against . . . an act, to collect, recover or offset any such debt as a personal liability of the debtor, whether or not discharge of such debt is waived." The parties agree that the discharge injunction applies to Debtor's personal liability on the Note. The parties disagree, however, on whether the debt evidenced by the Note was discharged in bankruptcy.

A discharge in bankruptcy eradicates the debtor's personal liability on the obligation, but it does not eliminate the underlying debt. *See Johnson v. Home State Bank*, 501 U.S. 78, 84 (1991) (stating that "a bankruptcy discharge extinguishes only one mode of enforcing a claim—namely, an action against the debtor *in personam*—while leaving intact another—namely, an action against the debtor *in rem*."); 3 William L. Norton, Jr., & William L. Norton III, *Norton Bankr. Law & Practice 3d* § 58:2 (Thomson Reuters/West 2012) (noting that discharge extinguishes personal liability on a debt, but does not "absolve the underlying debt retroactively"). Therefore, although Debtor's bankruptcy eliminated his personal liability on the Note, the underlying debt remains.

### A. Whether the Doctrine of Recoupment Applies and Whether the Trustee's Actions Were Permissible under State Law and the Trust Documents

After determining that the debt evidenced by the Note was not discharged in bankruptcy, the court must determine whether the Trustee's actions in offsetting Debtor's interest obligation on the Note against the income distribution violates the discharge injunction. The answer depends on whether the doctrine of recoupment applies. If recoupment applies, then no "debt" or "claim" exists as defined in the Bankruptcy Code, and the Trustee did not violate the injunction. *See Beaumont v. Dep't. of Veteran Affairs (In re Beaumont)*, 586 F.3d 776, 781 (10th Cir. 2009) (citing *Aetna U.S.*

*Healthcare, Inc. v. Madigan (In re Madigan)*, 270 B.R. 749, 754 (B.A.P. 9th Cir. 2001) ("Since recoupment is neither a claim nor a debt, it is unaffected by either the automatic stay or the debtor's discharge.") (citations omitted)). Recoupment allows the creditor to use the discharged debt defensively, despite the discharge injunction. *Anthem Life Ins. Co. v. Izaguirre (In re Izaguirre)*, 166 B.R. 484, 493 (Bankr. N.D. Ga. 1994) (noting the propriety of the use of recoupment as a defense).

As it applies in bankruptcy law, the equitable doctrine of recoupment allows a creditor to withhold funds owed to another party "to offset a claim that arises from the same transaction as the debtor's claim, without reliance on the setoff provisions and limitations of [11 U.S.C. §] 533, because the creditor's claim . . . is essentially a defense to the debtor's claim against the creditor . . . ." *Davidovich v. Welton (In re Davidovich)*, 901 F.2d 1533, 1537 (10th Cir. 1990) (per curiam) (internal citations omitted). The doctrine essentially "allows a creditor to recover a pre-petition debt out of payments owed to the debtor post-petition." *Beaumont*, 586 F.3d at 780 (internal citation omitted).

In bankruptcy cases, courts narrowly construe the doctrine of recoupment "because it violates the basic bankruptcy principle of equal distribution to creditors." *Conoco, Inc. v. Styler (In re Peterson Distrib., Inc.)*, 82 F.3d 956, 959 (10th Cir. 1996) (citing *Ashland Petroleum Co. v. Appel (In re B & L Oil Co.)*, 782 F.2d 155, 158 (10th Cir. 1986)). For the doctrine to apply, the two debts must arise out of the "same transaction." *Id.* (citation omitted). As the bankruptcy court noted, the Tenth Circuit has adopted the "single integrated transaction" definition of "same transaction." *See id.* at 960 (citing *Univ. Med. Ctr. v. Sullivan (In re Univ. Med. Ctr., Inc.)*, 973 F.2d 1065, 1081 (3d Cir. 1992)). This definition requires that "both debts arise out of a single integrated transaction so that it would be inequitable for the debtor to enjoy the benefits of that transaction without also meeting its obligations." *Id.* (citation omitted). In deciding whether offset violates a discharge injunction, courts must carefully consider the equities involved and "determine whether the claims 'are so closely intertwined that

allowing the debtor to escape its obligation would be inequitable.'" *Beaumont*, 586 F.3d at 781 (quoting *Peterson Distrib.*, 82 F.3d at 960).

The bankruptcy court provided a thorough analysis of Tenth Circuit recoupment decisions employing the "same transaction" test. (Doc. 5-18 at 18–21.) This court will briefly analyze these cases as well. In *Peterson Distributing*, the Tenth Circuit adopted the Third Circuit's "single integrated transaction" test. 82 F.3d at 960. There, the Tenth Circuit put great emphasis on the equities of the case. The court found that—despite the existence of a single franchise agreement that covered both obligations at issue—the obligations were not "so closely intertwined" that it would be equitable to allow Conoco (the creditor) to recover its losses at the expense of the other creditors. *Id*. at 962. Further, as the bankruptcy court noted, the Tenth Circuit noted there was "no overriding equitable reason . . . that compels the application of the doctrine of recoupment in this case" *Id*.

*Davidovich* involved an attorney (the debtor) who sued his former law partner to recover an amount awarded to him in an arbitration proceeding between the debtor and the former law partner. 901 F.2d 1533. The law partner attempted to set the debtor's claim off against two claims he himself had against the debtor. *Id.* at 1536. The Tenth Circuit applied the doctrine of recoupment and allowed offset of the law partner's claim arising out of the same arbitration proceeding; however, the claim arising from a separate partnership venture was not allowed. *Id.* at 1537–38. In explaining its decision, the Tenth Circuit noted that the debts from the arbitration proceeding originated from "a single integrated transaction . . . such that it would be inequitable for [the debtor] to enjoy the benefits of that transaction without meeting its obligations." *Id*. at 1537. In contrast, recoupment did not apply to the claim arising from the separate partnership venture because the debt arose under a separate partnership agreement, and not the arbitration proceeding. *Id*. at 1538.

In *Beaumont*, the debtor, a disabled veteran, was receiving disability payments from the Department of Veteran Affairs ("VA"). 586 F.3d at 778. He failed to notify the VA—as he was required to do—after he received a large inheritance. *Id*. at 779–80. After learning of the inheritance, the VA determined it had overpaid the debtor and notified the debtor of its intention to recoup the claim by offsetting future disability payments owed to the debtor, as was explicitly allowed by statute. *Id*. The VA continued to offset the debtor's benefits even after the debtor filed for bankruptcy, and the debtor argued that this conduct violated the discharge injunction. *Id.* Applying the "single integrated transaction" test, the Tenth Circuit found that the debtor's "inheritance was directly related to or intertwined with the amount of benefits [the VA] was obligated to pay to him, and the resulting overpayment of benefits." *Id*. at 781. In determining that the doctrine of recoupment applied, the court found that "it would be inequitable for the [debtor] to receive his inheritance, continue to receive benefits as if his income was zero, then be able to discharge in bankruptcy the overpayments . . . ." *Id*.

As is stated above, the discharge injunction did not eradicate Debtor's obligation to the Trust. Interest continues to accrue on the Note at the rate of $3,333.33 per year. Debtor's obligation to the Trust is his liability for interest on the Note. In June 2010, the Trustee applied Debtor's 2010 income distribution to the interest on the Note. Debtor's one-third share of the income totaled $4,811.

The court finds that—for the year in which the income distribution was made—Debtor's right to receive income distributions from the Trust and his obligation to the Trust are closely intertwined. Both are part of the same transaction: administration of the Trust. (Doc. 5-18 at 21 ("Both relate to the administration of the Trust during the same time period and to Debtor's then current rights and obligations.").) Further, Debtor's obligation to the Trust and his right to receive income distributions are so closely intertwined that it would be inequitable to allow him to receive distributions while at the same time failing to honor his obligation to the Trust.

Unlike the multiple creditors involved in *Peterson Distributing*, the rights of other creditors are not involved here, as this case deals with recoupment to the Trust from disbursements made by the Trust. *See* 82 F.3d at 961–63. Instead, it appears that only Elaine and Steven will be prejudiced if recoupment does not apply. And, as the bankruptcy court noted, the recoupment here bears a close resemblance to the recoupment in *Davidovich* upheld by the Tenth Circuit. *See* 901 F.2d at 1537–38 (upholding recoupment where both debts arose from the same arbitration award). Further, the inequities to Elaine and Steven in this case surpass those in *Beaumont*, where it was unfair for the debtor to receive benefits payments as if he received no income and also enjoy his inheritance. *See* 586 F.3d at 781. It would also be inequitable for Debtor to receive Trust assets belonging to his siblings—represented by two-thirds of the value of the farmhouse—and continue to receive equal income distributions from the Trust.

Considering the equities involved in this case, the court finds that Debtor's receipt of an income distribution for the same period of time for which he was not honoring his obligation to pay interest would be inequitable. Debtor's 2010 interest obligation of $3,333.33 and Debtor's 2010 income distribution were part of the same transaction and the doctrine of recoupment applies.

As to the Trustee's offset of the remaining $1,477.67 against Debtor's interest obligation for a prior year, the court agrees that the "single integrated transaction" test is still met and the Trustee did not violate the discharge injunction. As the bankruptcy court explained, the Note plus accrued interest would eventually total more than Debtor's one-third share in the principal of the Trust. Like in *Beaumont*, where the VA recouped past overpayments from current benefits, non-bankruptcy law supports recoupment here. The bankruptcy court provided a very thorough discussion of the authority

of the Trustee under the Trust and state law[6] to apply Debtor Lunt's income distribution to payment of interest on the Note.

Although the court will not repeat in full that discussion here, the court—upon performing an independent review—concurs that the Trustee's application of Debtor's income distribution to the interest remaining on the Note was a valid method of carrying out the Grantor's intent that distributions of principal to the beneficiaries be equal when the Trust terminates in 2024. Article VI(C)(4) of the 1984 Trust Amendment states this intent. (*See* Doc. 5-3 at 11, 1984 Amendment to Trust Agreement, Article VI ("Upon termination, the Trustee shall distribute the principal and any accrued and undistributed income of the trust in equal shares to the children of the Grantor . . . .").) This provision also directs the Trustee to consider all transfers to the Grantor's children in accomplishing equal distributions to the beneficiaries. (*Id*.) As is stated above, the Trustee realized in 2010 that if the Note remained unpaid and interest continued to accrue, then the Note plus total accrued interest would exceed the amount of principal expected to be distributed to Elaine and Steven. To rectify this, the Trustee exercised its discretion and decided to apply income payments that had otherwise been paid to Debtor toward Debtor's liability to the Trust. These actions were supported by the Trustee's offset authority under Kansas law.[7]

---

[6] Debtor argues that the Trustee's actions constituted an impermissible setoff and that the bankruptcy court's reliance on state law was in error. But setoff and recoupment are distinct; setoff involves mutual debts that arise from *different* transactions, while recoupment involves claims arising from the *same transaction*. *Peterson Distrib.*, 82 F.3d at 959. Because the equitable defense of recoupment applies—as explained above—there is no impermissible setoff. *See Davidovich*, 901 F.2d at 1537 ("[Recoupment] has evolved to permit a creditor to offset a claim that 'arises from the same transaction as the debtor's claim,' without reliance on the setoff provisions and limitations of [11 U.S.C. §] 553, because the creditor's claim in this circumstance is essentially a defense to the debtor's claim against the creditor rather than a mutual obligation, and application of the limitations on setoff in bankruptcy would be inequitable.") (quoting *B & L Oil Co.*, 782 F.3d at 157 (internal citation omitted)).

[7] *See* Doc. 5-18 at 11–16 (citing K.S.A. § 58a-815(a)(2)(A) (granting to trustees of express trusts the same powers as an unmarried competent owner has over individually-owned property); K.S.A. § 58a-816(18) (allowing trustees to make loans out of trust property and hold a lien on future distributions for repayment); George Gleason Bogert, George Taylor Bogert, & Amy Morris Hess, *The Law of Trusts & Trustees*, § 814, text associated with footnote 56 (current through 2011 update) (available under database identifier BOGERT at www.westlaw.com) (describing a trustee's authority to set off a distribution due to a beneficiary against a sum due to the trustee from a beneficiary); and a variety

**B. Debtor's Remaining Arguments**

Debtor puts forth several arguments why the bankruptcy court erred in determining the doctrine of recoupment applies in this case. Each of these arguments fails. First, Debtor argues that the bankruptcy court's decision violates the bankruptcy code's policy of providing debtors with a "fresh start." Debtor is correct that affording debtors with a fresh start is one purpose under the bankruptcy code. *In re Stewart*, 109 B.R. 998, 1006 (D. Kan. 1990). But as the bankruptcy court aptly explained:

> [A]llowing recoupment promotes equity. Because of Debtor's discharge, the Trustee is prohibited from enforcing the note as a personal liability of Debtor. As a result, Elaine and Steven will not receive their distributions of the Note principal, which distributions are specifically provided for in the Trust Amendment authorizing the Note. Application of the discharge injunction as a shield to prevent the offset of income distributions against Debtor's interest obligations would compound the injustice by allowing Debtor to benefit from current distributions from the Trust without having to comply with his duties to the Trust.

(Doc. 5-18 at 22.) The court agrees that the "interest in a fresh start pales when compared with the Trustee's interest in carrying out the Grantor's intent to equalize the principal distributions to the beneficiaries upon termination of the Trust." (*Id.*)

Second, Debtor contends that the 1984 and 1985 Amendments and the Note are all distinct contracts entered into at different times, and thus cannot be part of the same transaction for recoupment purposes. Debtor's argument falls short. The 1984 Trust Amendment contains the Grantor's intention that his children share equally in the principal of the Trust and authorized the Trustee to consider transfers to children and/or loans in making unequal distributions to achieve this goal. The Note bears a direct relation to the farmhouse Debtor received from the Trust. Moreover, the 1985 Trust Amendment expressly discusses the $33,333.33 obligation on the Note, and the requirement that the obligation be paid one-half each to Steven and Elaine. Thus, the 1984 Trust Amendment, the Note, the

---

of Kansas probate law cases (discussing the equitable right of offset in cases where an heir or distributee owes a debt to the estate)).

transfer of the farmhouse, and the 1985 Trust Amendment are all integrated into a single, integrated transaction—administration of the Trust.

Debtor's argument is overly simplistic. Just as the court in *Peterson Distributing* determined that the "same transaction" requirement was not met merely because the claims arose from a single franchise agreement, the existence of multiple amendments and different documents does not mean the "same transaction" requirement is not met. *See* 82 F.3d at 960–63. A close examination of the Note, the 1984 and 1985 Amendments, the transfer, and the equities of this case lead to the conclusion that both Debtor's obligation to Trust and his right to an income distribution involve a single integrated transaction. As stated by the bankruptcy court, "both relate to the administration of the Trust during the same time period and to Debtor's then current rights and obligations." (Doc. 5-18 at 21.)

Third, Debtor argues that the transfer of the farmhouse to Debtor and his wife was not a "loan" and therefore the Trustee cannot consider the transfer of the farmhouse when making distributions to the beneficiaries. Article VI(C)(4) of the 1984 Amendment provides:

> Upon termination, the Trustee shall distribute the principal and any accrued and undistributed income of the trust in equal shares to the children of the Grantor, provided, the Trustee is authorized and empowered to make unequal distribution of the principal and any accrued and undistributed income in cash or in kind in order to carry out the desires of the Grantor for the Trustee to **consider all transfers** to the Grantor's children that have been made by the Grantor and his wife by Will or otherwise. Any **loans** made by Grantor or his wife which have not been repaid shall be treated as transfers by the Trustee, whether or not the statute of limitations have run. The decision of the amounts of the transfers shall be in the Trustee's sole and absolute discretion and the decision of the Trustee shall be final.

(Doc. 5-3 at 11–12 (emphasis added).) Debtor focuses on the sentence regarding "[a]ny loans made by Grantor . . ." to support his contention. (*See id.* at 11.) However, the sentence immediately preceding that one allows the Trustee to "consider all transfers to the Grantor's children that have been made by the Grantor and his wife by Will or otherwise." (*Id.*) The bankruptcy court correctly dismissed Debtor's argument, noting that the Trustee need not rely on the provision regarding "loans" and can

instead "consider all transfers." (Doc. 5-18 at 16.) The Trust's conveyance of real property to Debtor and his wife on credit was a transfer and the Trustee properly considered it in exercising its discretionary authority to make unequal distributions. Debtor's reliance on the "loans" provision is misplaced.

Fourth, Debtor argues that even if the conveyance of the farmhouse was a transfer, the farmhouse was conveyed only to Debtor's spouse, Rose Ann, and not to Debtor, and thus was improperly considered by the Trustee. It is undisputed that the deed conveys the property only to Rose Ann Lunt. However, it is also undisputed that both Debtor and his wife executed the Note, and both signed the contract for purchase of the home from the Trust. How the deed was titled is not important; substance prevails over form. Debtor derived significant value from the transfer, as he has lived in the house for almost thirty years. And in signing the Note, Debtor acknowledged that he received value for the transfer of the farmhouse. As Steven and Elaine point out, "the farmhouse distributed to Debtor in exchange for the promissory note *came from the Trust*." (Doc. 12 at 14.) The Trustee properly considered the transfer of the farmhouse to Debtor and his wife, regardless of how the deed is titled. Debtor's argument fails.

Finally, Debtor at first appeared to argue that the 1984 Trust Amendment does not allow the Trustee to make unequal income distributions.[8] But Debtor's reply clarifies that he instead argues that "if the note cannot be collected without violating the discharge injunction, [the Trustee]'s distribution of unequal income payments in June, 2010 was not permitted under the express terms of either the 1984 Trust Amendment or the 1985 Trust Amendment." (Doc. 16 at 10.) The Debtor then argued that the Trustee's broad discretion in making distributions in proportions as it deems necessary is limited by the Trustee's duty to act in good faith, as required by K.S.A. § 58a-814. Debtor claims the Trustee

---

[8] As Elaine and Steven pointed out, and as is quoted in full in Section I above, Article VI(A)(3)(b) of the 1984 Amendment to Trust Agreement gives the Trustee discretion to make distributions of income to the Lunt Children after the Grantor's wife's death in "such proportions and amounts as the Trustee may determine." (Doc. 5-3 at 6.)

-14-

did not act in good faith when it allowed interest to accrue on the discharged debt, did not seek to collect the debt from Debtor's wife, and then began to collect the debt through an "improper setoff." (*Id.*)

As is stated several times throughout this opinion, one of the main purposes of the Trust was to treat the Lunt children equally. The Trustee properly exercised his discretion in distributing unequal income distributions in order to fulfill the Grantor's intent. The Trustee's actions complied with the statute cited by Debtor, which also requires a trustee to act "in accordance with the terms and purposes of the trust and the interests of the beneficiaries." K.S.A. § 58a-814. And because the doctrine of recoupment applies as set out above, there was no "improper setoff" or attempt to collect the debt. Debtor points to no evidence that the Trustee failed to act in good faith, and the court cannot find that the Trustee's actions were taken for any other purpose than to carry out the Grantor's intent. This argument fails.

### C. Conclusion

After careful review, the court affirms that the bankruptcy court's well-reasoned decision. The bankruptcy court correctly determined that the discharge injunction did not extinguish the underlying debt on the Note, and that the doctrine of recoupment applied. Careful consideration of the facts and the equities of this case support that finding. The 1984 and 1985 Trust Amendments, the Note, and the transfer of the farmhouse all are part of a single, integrated transaction—administration of the Trust. The Trust documents and Kansas law support the Trustee's actions in applying Debtor's income distribution to his obligation on the Note. And carrying out the Grantor's intent—to treat the Lunt siblings equally—was also achieved by the Trustee's actions. For the reasons above, the bankruptcy court's order granting the motion for summary judgment by intervenors Steven and Elaine and denying Debtor's motion for summary judgment is affirmed.

**IT IS THEREFORE ORDERED** that the final Memorandum Opinion and Judgment of the bankruptcy court is affirmed.

Dated this 25th day of September, 2013, at Kansas City, Kansas.

s/ Carlos Murguia<br>
**CARLOS MURGUIA**<br>
**United States District Judge**